**Raymond Lee FRANKLIN,**
**Petitioner-Appellant,**

**v.**

**Robert FRANCIS, Warden,**
**Respondent-Appellee.**

**No. 83–8022.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 9, 1984.

Rehearing En Banc Denied
Jan. 30, 1984.

Ronald J. Tabak, John Charles Boger, New York City, for petitioner-appellant.

Susan Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

ON PETITION FOR REHEARING

(Opinion November 16, 1983, 11th Cir., 1983, 720 F.2d 1206).

Before TJOFLAT and HILL, Circuit Judges, and SIMPSON, Senior Circuit Judge.

PER CURIAM:

The state's petition for rehearing is denied with the following observations:

The state cites *Lamb v. Jernigan*, 683 F.2d 1332 (11th Cir.1982), *cert. denied* —— U.S. ——, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983), for the proposition that the differences between the impermissible presumption instruction in *Sandstrom v. Montana*,

442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and the instruction we found impermissible in the panel opinion were "constitutionally significant." We do not read *Lamb* as supporting this argument; in *Lamb* the challenged jury instruction on intent was not mandatory. The charge in *Lamb* simply stated, "[I]ntent ... *may be inferred* ... from the proven circumstances or by the acts and conduct of the defendant or *may be* presumed when it *would be* the natural and probable consequence of the particular acts." 683 F.2d at 1339 (emphasis added). We noted in *Lamb* that both parts of this instruction were permissive:

> [T]he first part of the instruction, which was not present in *Sandstrom,* is perfectly sound, constitutionally and otherwise. The import of the statement that intent "may be inferred ... from proven circumstances or by the acts and conduct of the defendant" is simply that the jury may rely on circumstantial evidence in finding intent. In no way does the instruction suggest that the burden is on the defendant rather than the prosecution or that the circumstantial evidence need not convince the jury of the defendant's intent beyond a reasonable doubt.... As to the second part of the instruction, stating that intent "may be presumed when it would be the natural and necessary consequence of the particular acts," such charge was also permissive. Unlike the ambiguous direction— "the law presumes that ..."—contained in the *Sandstrom* and *Mason* [*v. Balkcom,* 669 F.2d 222 (5th Cir. Unit B 1982), *cert. denied* —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983)] instructions, the "*may be* presumed" language used here was unlikely to be interpreted by reasonable jurors as *requiring* them to draw an inference of intent.

*Id.* at 1339–40 (emphasis in original). In contrast, at Franklin's trial, the judge instructed the jury that "the acts of a person ... *are presumed* to be the product of the person's will ... a person ... *is presumed* to intend the natural and probable consequences of his acts." As in *Sandstrom,* this instruction gives the jury no option whether to apply it, and is thus mandatory.

*Sandstrom* analysis involves classifying an instruction as permissive or mandatory, and rebuttable or irrebuttable. Permissive presumptions are generally acceptable as long as there is a rational connection between the inference and the underlying facts. *County Court of Ulster County v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224–5, 60 L.Ed.2d 777 (1979). The same is true of only a few mandatory presumptions: "To the extent that a presumption imposes *an extremely low burden of production— e.g., being satisfied by 'any' evidence*—it may be well that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such." *Id.* at 157 n. 16, 99 S.Ct. at 2225 n. 16 (emphasis added), cited in *Lamb* 683 F.2d at 1338 n. 9. The challenged instructions ·at Franklin's trial created mandatory rebuttable presumptions that placed the burden on Franklin to rebut them by more than "some" evidence, *see Sandstrom,* 442 U.S. at 517, 99 S.Ct. at 2456, and were therefore not constitutionally permissible.

The state next argues, citing *Lamb* and *Corn v. Zant,* 708 F.2d 549 (11th Cir.1983), that if the instructions did shift the burden to Franklin to prove that he lacked intent to kill, other language in the instructions cured the defect. We note first that while the *Lamb* panel indicated that other instructions "reduced the likelihood that the jury might misinterpret the [intent] instruction," 683 F.2d at 1339, the panel did not discuss whether the other instructions would be sufficient to cure a defective instruction. Rather, the panel decided that the instruction was not mandatory and therefore not defective. *Id.* at 1339–40.

In *Corn,* the panel did decide that other instructions cured a defective intent instruction. However, in addition to the other instructions given in Franklin's case, that we discussed in the panel opinion, Corn's jury heard a charge "replete with cautious explanations that refute Corn's claim that an irrebuttable presumption weighed against him." 708 F.2d at 559. The court

quoted some of these instructions, *id.,* "by way of example:"

> [T]he instructions were clear that the accused "may" show circumstances to negate intent, "[b]ut he is not required to do so", and that he "may" show that the killing was done without malice, "[b]ut he is not required to do so." ... [Also,] the court stated "[i]f such evidence produced against the accused, if there be such, discloses the homicide was done without malice, then this presumption that the homicide is malicious does not exist." The instruction continued, "this presumption ... does not arise against the slayer unless it be first shown to a moral and reasonable certainty and beyond a reasonable doubt the defendant was the intentional slayer."

The trial judge even instructed the jury specifically that "the burden is on the State to prove such intention beyond a reasonable doubt [and] the burden is not on the Defendant to disprove intention." *Id.* at 569. These instructions were all in addition to the general burden allocation instructions present at Franklin's trial as well as at Corn's trial, and the instruction that *criminal* intent should not be presumed, also present at both trials. In finding no reversible error in the trial judge's instructions, the *Corn* court noted in particular the above-quoted extra instruction near the end of the charge regarding the allocation of the burden to prove intent. *Id.* at 560.

In the panel opinion we discussed why the instructions that the presumption could be rebutted and that a person would not be presumed to act with criminal intention did not cure the offensive intent instruction. Franklin's jury did not hear a charge containing the extra instructions set out in *Corn.*

The only extra instruction at Franklin's trial even remotely comprehensible as affecting the burden allocation on intent was the following:

> [I]t is not encumbent [sic] upon the accused to prove an absence of malice if the evidence for the prosecution shows facts which may excuse or justify the homicide.

> The accused is not required to produce evidence of mitigation, justification or excuse on his part to the crime of murder. Whether mitigation, justification or excuse is shown by the evidence on the part of the State, it is not required of the accused to prove an absence of malice if the evidence for the State shows facts which may excuse or justify the homicide.

However, in context these instructions all referred to the malice part of the charge. Franklin argued that he did not intend to kill Claude Collie. The damaging presumption, that a person is presumed to intend the natural and probable consequences of his acts, was not mitigated by the correct malice charge.

■ In summary, the events adduced at trial showed clearly that Franklin fired the shot that went through the door and killed Claude Collie. The evidence also showed that the shot coincided with Collie's slamming the door in Franklin's face. Franklin was said to have been quite nervous. Though he had the opportunity to injure others he did not. The only substantial question put to the jury was Franklin's intent. The presumptions contained in the instructions on intent were thus extremely important to the outcome of the trial. This is not a situation where we can take lightly the dictates of *Sandstrom;* we will not find constitutionally defective instructions to be cured when we have no language from which a reasonable juror could have understood the presumption and applied it in a constitutional manner.

The Petition for Rehearing is

DENIED.