Ralph I. Knowles, Jr., Drake, Knowles & Pierce, Ginger Garrett, Tuscaloosa, Ala., for petitioner-appellant.

Don Siegelman, Atty. Gen., P. David Bjurberg, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

**Lewis Coleman COWLEY, Petitioner–Appellant,**

v.

**Larry STRICKLIN, Director, Taylor Hardin Secure Medical Facility, and the Attorney General of the State of Alabama, Respondents–Appellees.**

No. 90–7294.

United States Court of Appeals, Eleventh Circuit.

April 25, 1991.

Before CLARK and BIRCH, Circuit Judges, and COFFIN *, Senior U.S. Circuit Judge.

CLARK, Circuit Judge:

Because we hold that the district court erred in its conclusion that petitioner-appellant Lewis Coleman Cowley was not entitled to a state-provided mental health expert to assist in the preparation and conduct of his defense, we reverse the district court's refusal to grant the writ of habeas corpus.

## I. BACKGROUND

Cowley was sentenced in 1986 to two concurrent thirty-year terms of imprisonment for sexually assaulting a woman standing at a bank teller machine in Huntsville, Alabama. Cowley was provided counsel, Charles Rodenhauser, by the state. After his appointment, Rodenhauser visited Cowley in jail and saw that Cowley was acting strangely. As a result of his client's apparent mental illness, Rodenhauser talked with the trial judge, Judge Snodgrass, and advised that he wanted to file a motion for psychiatric assistance and evaluation. Before allowing this motion, Judge

---

* Honorable Frank M. Coffin, Senior Circuit Judge, U.S. Court of Appeals for the First Circuit, sitting by designation.

Snodgrass decided that Cowley first would have to be evaluated by the Huntsville–Madison County Mental Health Center; the resulting report would have to be provided to the court and the prosecution as well as to the defense. Rodenhauser, the prosecution, and Judge Snodgrass all signed the referral form requesting a mental health evaluation.

The Mental Health Center psychiatrist who examined Cowley, Dr. Alfred Habeeb, conducted a 35–45 minute interview and concluded that Cowley was competent to stand trial and that he was responsible for his actions at the time of the offense. Habeeb informed the court and the parties of his findings by letter. Rodenhauser and Judge Snodgrass had a number of further conversations about Cowley's case, and Judge Snodgrass informed Rodenhauser that he kept a file on Cowley in his office and that he had committed Cowley to mental institutions three times previously. Attorney Rodenhauser testified that, after Habeeb's letter was received, Judge Snodgrass said, "[T]hat's all I need.... I don't need to go any farther. He doesn't need any more evaluations." After this point, Judge Snodgrass continued to deny Rodenhauser's repeated requests for psychiatric assistance in the preparation of the defense. At least one of these requests was written and stated:

1. The Defendant has been in and out of mental institutions and hospitals all of his life.
2. The Defendant has been treated for numerous mental disorders all of his life.
3. The Defendant's attorney has dealt with many insane persons in the past and believes that there is serious question [as] to the defendant['s] sanity, responsibility for his actions, and competency to stand trial on these criminal charges.
4. This Defendant's lawyer makes this request on behalf of the defendant for an evaluation sep[a]rate and apart from the one previously conducted by the Huntsville, Madison County, Mental Health Center in an effort to independently evaluate the defendant's sanity at the time of these alle[g]ed criminal acts.

5. The Defendant's attorney is in desperate need of an independ[e]nt evaluation of the defendant in order to properly prepare his defense.
6. The Defendant is an indi[g]ent person who can not financially afford such an evaluation.

On November 3, 1986, a preliminary trial by jury was held to determine Cowley's competence. Dr. Habeeb, who repeated his earlier statements in the letter, was the only witness for the state. Habeeb noted that an earlier psychiatrist had previously diagnosed Cowley as suffering from schizophrenia. Habeeb did not rule this diagnosis out but said he found no evidence of schizophrenia. Judge Snodgrass refused to subpoena this previous psychiatrist because he was more than one hundred miles away from Huntsville. Rodenhauser was able to convince a personal friend of his, clinical psychologist John McMillan, to conduct a limited review of Cowley's records and to testify at the competency proceeding without compensation. McMillan, who had treated Cowley ten years earlier, did not meet with him and did not give an opinion as to his competency to stand trial. He did, however, testify that he believed that Cowley suffered from schizophrenia. The jury found Cowley competent that same day.

The following day, a different jury heard Cowley's criminal trial. Habeeb again testified for the state that Cowley was competent and knew right from wrong at the time of the crime. He testified that Cowley suffered from "sexual sadism," that Cowley had been previously diagnosed as suffering from schizophrenia but that he could not verify the diagnosis, and that Cowley was presently on medication. On cross-examination, Habeeb admitted that he had reviewed Cowley's records from the Mental Health Center for at most ten minutes prior to interviewing Cowley. He looked at the records again for only twenty minutes before writing the letter to Judge Snodgrass. McMillan again testified for the defense, giving the same information as before. The jury found Cowley guilty of sexual abuse in the first degree and assault in the second degree. On the

grounds now presented for our review, Cowley appealed his convictions to the Alabama Court of Criminal Appeals, which affirmed without opinion. The Alabama Supreme Court denied Cowley's petition for a writ of certiorari after initially granting it. These proceedings exhausted Cowley's state remedies.[1]

Cowley filed a petition for a writ of habeas corpus on October 7, 1988. The magistrate conducted an evidentiary hearing. Dr. Norman Poythress, a psychologist at Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama, testified for Cowley. He stated that he had spent five hours reviewing Cowley's medical records and could have spent many more, that he could have assisted in a number of ways in the preparation of Cowley's defense, and that he had concluded that Cowley had a strong mental disease or defect defense to the 1986 charges. The magistrate summarized Poythress' testimony as follows:

> [Dr. Poythress] stated Cowley had been "tormented" for a number of years with sexual abuse thoughts, nightmares, and daytime fantasies of physically assaulting or mutilating women's bodies. Dr. Poythress testified that, in Cowley's words, his thoughts "compelled him" to consider acting aggressively toward women. There was evidence that Cowley often sought external control such as psychiatric assistance, medication, or hospitalization when he feared his impulses might overwhelm him and cause him to act them out. Cowley's records documented two or three episodes when Cowley became extremely regressed, and at those times he was mute and disorganized, he had no ability to care for himself, he urinated or defecated on himself, and he stayed in bed and did not eat. Dr. Poythress had observed one of these episodes. He also testified as to evidence in the medical records showing Mr. Cowley occasionally had perceptual disturbances, such as hearing voices, and during those times would have difficulty distinguishing fantasy from reality. Dr. Poythress found evidence of a serious

head injury which Mr. Cowley had suffered in his early adulthood, and he stated there was an "indication of some possible impairment in terms of general cognitive functioning or general ability" which may have been related to the organic damage. Dr. Poythress further testified the medical record tended to support a conclusion that Cowley's sexual sadism disorder was severe, since the physicians at the VA Hospital had treated Cowley with an experimental drug, Depo–Provera, and had consulted with a known national expert in the area of biological treatment of sexual disorders. Dr. Poythress testified Mr. Cowley attempted to assault women even when he was under close and careful supervision, and that there were times when Cowley would not be able to control his behavior even in the presence of an authority figure. This evidence of Cowley's inability to control his conduct tended to prove the aspect of the Alabama test for insanity requiring that the defendant show he was unable to appreciate the criminality of his conduct or that he was unable to conform his conduct to the requirements of the law.

The magistrate recommended that the writ be granted, finding that the state failed to provide Cowley with the psychiatric assistance necessary for his defense. On April 10, 1990, the district court rejected this recommendation, holding that Cowley had received a competent, "independent" evaluation from Habeeb and that he was not entitled to "shop around" for a psychiatric evaluation more to his liking.

Because of his continuing mental health difficulties, Cowley is currently held at the Taylor Hardin Secure Medical Facility. This facility serves the criminal justice system in Alabama by conducting pretrial evaluations of defendants in terms of their competency to stand trial and their mental state at the time of the offense. It also provides treatment to those who have been found incompetent to stand trial or guilty by reason of insanity and to those who have been convicted and sentenced to pris-

---

1. *See, e.g., Walker v. Zant,* 693 F.2d 1087, 1088 (11th Cir.1982).

on but who have been transferred to the facility for health reasons.

## II. DISCUSSION

The issue this case raises is whether the state trial court's failure to provide Cowley with expert psychiatric assistance for his defense violated due process concerns. In *Ake v. Oklahoma,*[2] the Supreme Court established that one of the "basic tools of an adequate defense"[3] is competent psychiatric assistance, when indicated. The *Ake* Court held, "[W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense."[4] We must therefore determine (1) whether Cowley made a sufficient showing to the trial judge that his insanity defense would be a "significant factor at trial," and (2) whether Cowley received competent psychiatric assistance for his defense.

### A. *Significance of Insanity Claim*

We hold that the state trial judge was presented with ample evidence showing that Cowley had a significant insanity defense. Cowley made repeated, timely, and specific requests for expert assistance. In one of Cowley's motions for psychiatric assistance, Judge Snodgrass was informed that Cowley had suffered from a number of mental disorders and had been "in and out of mental hospitals all of his life." In fact, Cowley had been committed a total of sixteen times. Previously, Judge Snodgrass had personally committed Cowley to mental institutions and was well aware of Cowley's mental problems. Judge Snod-

grass had once (before the practice was declared unconstitutional) committed Cowley for being a "criminal sexual psychopath." The magistrate found that Judge Snodgrass "kept a file containing records of Mr. Cowley's previous mental problems which had been brought to the court's attention." The letter sent by Dr. Habeeb to the court and to the parties diagnosed Cowley as suffering from a psychosexual disorder, "sexual sadism." Dr. Habeeb's letter informed Judge Snodgrass that Cowley had probably been taking antipsychotic medicine, and Habeeb recommended that Cowley be treated at Alabama's Taylor Hardin Secure Medical Facility. These facts amply support the magistrate's factual determination that Cowley's insanity defense would be a significant factor in the proceedings against him.

It does not follow that, because Judge Snodgrass had evidence from Dr. Habeeb that Cowley was sane at the time of the crime and competent for trial, he was justified in refusing the request for psychiatric assistance. This argument makes little sense in a system of trial by jury. There was *some* evidence that Cowley was sane, but there was also substantial evidence that he was not sane. The validity of the defense should then have been for the jury to decide. Otherwise, as long as there is a modicum of evidence indicating sanity, any indigent with a mental disability could be denied psychiatric assistance to present an insanity defense. In *Ake,* there was evidence that the defendant was competent when medicated,[5] but the Supreme Court found that this was not sufficient to allow the trial court to deny Ake's request for assistance. Where, as here, the defendant showed that psychiatric expertise would aid his defense significantly, the assistance should have been granted.[6]

2. 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

3. *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971).

4. 470 U.S. at 83, 105 S.Ct. at 1096.

5. *Ake,* 470 U.S. at 71–72, 105 S.Ct. at 1090–91.

6. *Cf. Thomas v. Jones,* 891 F.2d 1500, 1505–06 (11th Cir.1989) (trial court not made aware of Jones' insanity), *cert. denied,* —— U.S. ——, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); *Clark v. Dugger,* 834 F.2d 1561, 1563–65 (11th Cir.1987) (no evidence of insanity presented to trial judge), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988); *Tucker v. Kemp,* 818 F.2d 749, 752–53 (11th Cir.) (defense counsel did not believe evidence supported insanity de-

## B. *Adequacy of Assistance*

Alabama argues that Cowley received adequate assistance even though Judge Snodgrass denied Cowley's request for an expert of his own, in that Dr. Habeeb provided information to both the prosecution and the defense and Cowley was able to rely upon the volunteered services of Dr. McMillan. We hold that neither of these circumstances amount to the requisite psychiatric assistance in the conduct of the defense.

### 1. *Dr. Habeeb's Assistance*

The district court found that Dr. Habeeb was a "qualified," "independent psychiatrist." This may have been the case, but Dr. Habeeb did not provide the constitutionally requisite assistance to Cowley's defense. *Ake* holds that psychiatric assistance must be made available for the *defense*. This assistance may include conducting "a professional examination on issues relevant to the defense," presenting testimony, and assisting "in preparing the cross-examination of a State's psychiatric witnesses."[7] Dr. Habeeb performed none of these essential tasks on Cowley's behalf. Dr. Habeeb was called by the prosecution and testified against Cowley at both the competency hearing and the trial. His testimony was that he had examined Cowley and found him to be competent and that Cowley showed no signs of schizophrenia or other evidence of insanity at the time of the crime. Dr. Habeeb did not assist in Cowley's trial preparation and obviously could not have assisted Cowley in his own cross-examination. Dr. Poythress, Cowley's mental health expert during the federal habeas proceedings, stated:

[Habeeb's] evaluation was inadequate in terms of depth and scope, and the testimony [contained] conclus[o]ry as opposed to descriptive or formulative kinds of information about Mr. Cowley.

The magistrate summarized other parts of Poythress' testimony:

[Poythress] felt that Dr. Habeeb could have been more effectively cross-examined if Mr. Cowley had an expert advisor regarding the weaknesses in Dr. Habeeb's testimony. He stated that there was some information about Mr. Cowley to which Mr. Rodenhauser did not have access, either through Dr. Habeeb or Dr. McMillan. He testified that Dr. Habeeb was the only witness in a position to render an opinion about Mr. Cowley's responsibility at the time of the act, because Dr. Habeeb was the only one who actually examined Mr. Cowley about the crime.

In short, Dr. Habeeb provided little if any assistance to the defense. As the Ninth Circuit has recently noted, "The right to psychiatric assistance does not mean the right to place the report of a 'neutral' psychiatrist before the court; rather it means the right to use the services of a psychiatrist in whatever capacity defense counsel deems appropriate...."[8] The state cannot preempt a defendant's right to a defense psychiatrist by first appointing its own expert.

### 2. *Dr. McMillan's Assistance*

Cowley's good fortune in finding a generous psychologist to testify *gratis* on his behalf does not equate to adequate psychiatric assistance under the circumstances of this case. Given the overwhelming evidence of his guilt, Cowley's only viable defense was that of insanity. As in *Ake*, the burden of proof was on the defendant to demonstrate his insanity at the time of the crime. However, in *Ake* the defendant only needed to raise a "reasonable doubt" as to his sanity before the state was required to prove his sanity beyond a reasonable doubt.[9] The Alabama courts have summarized that state's less lenient law concerning the burden of proof relevant to an insanity defense:

---

fense), *cert. denied*, 481 U.S. 1063, 107 S.Ct. 2209, 95 L.Ed.2d 863 (1987).

**7.** *Ake*, 470 U.S. at 82, 105 S.Ct. at 1096.

**8.** *Smith v. McCormick*, 914 F.2d 1153, 1157 (9th Cir.1990).

**9.** *Ake*, 470 U.S. at 73 & n. 1, 105 S.Ct. at 1091 & n. 1.

The defense of insanity is an affirmative defense. The burden of proving this defense rests upon the defendant and never shifts to the state.... The burden upon the defendant is to establish the issue of legal insanity by a preponderance of the evidence and to the reasonable satisfaction of the jury.[10]

It was impossible for Cowley to meet this heavy burden, but not because he was insufficiently disturbed. The state of Alabama made it impossible for Cowley to meet this burden by refusing to provide an independent mental health professional who could evaluate Cowley's sanity at the time of the assault.

After Judge Snodgrass denied his motions for psychiatric assistance, attorney Rodenhauser procured the assistance of Dr. McMillan, who was a personal friend, by telling him that he was "desperate." Dr. McMillan had seen Cowley ten years earlier but did not interview him prior to testifying. As a result, Dr. McMillan could not advise the jury as to whether Cowley was competent to stand trial or whether he was responsible for his acts at the time of the crime. The prosecution emphasized the differences between Habeeb and McMillan, in that Habeeb was a psychiatrist and had seen Cowley recently whereas McMillan was a psychologist who had not examined Cowley in years.

Dr. Poythress testified that Cowley did have a significant psychiatric defense but that much of the information necessary to establish the defense was not presented at trial. He also testified that Dr. McMillan could not afford adequate assistance because "he didn't assess Mr. Cowley for the case in point. All he testified about was Mr. Cowley's condition and symptoms and treatment actually several years earlier from the date of the offense, and did not

assess Mr. Cowley with respect to his mental state in June of '86."

These circumstances indicate that Cowley's sole defense was severely hobbled by the state's refusal to provide expert psychiatric assistance. Dr. McMillan was pressed into giving advice, and he could not testify as to whether Cowley was either competent to stand trial or insane at the time of the crime.[11] We hold that the limited aid rendered by Dr. McMillan was not a sufficient substitute for the provision of an adequate defense psychiatrist.

### III. CONCLUSION

Appellant Cowley is a man with serious mental problems directly related to the crime with which he was charged. His request for psychiatric expert assistance was improperly denied by the state trial court. We therefore REVERSE and REMAND for the district court to order the state of Alabama to release Cowley unless the state affords Cowley a new trial within a time to be set by the court.

---

10. *Herbert v. State,* 357 So.2d 683, 688 (Ala. Crim.App.1978); *see also Hill v. State,* 507 So.2d 554, 556 (Ala.Crim.App.1986).

11. *See Blake v. Kemp,* 758 F.2d 523, 529–33 (11th Cir.1985) (examination by state's psychiatric witness, who did not determine sanity at time of crime, insufficient to guarantee fair trial under *Ake* ); *cf. Martin v. Wainwright,* 770 F.2d 918, 934 (11th Cir.1985) (no *Ake* violation where defendant was examined by seven mental health experts and "two of the experts significantly assisted Martin's defense by testifying at trial that Martin was insane at the time the murder was committed."), *modified on other grounds,* 781 F.2d 185 (11th Cir.), *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986).